In Appeal Number 2008-1120, In Re DBC. Could members when you're ready? May it please the court, Larry Jarvis on behalf of DBC. Once an unconstitutional appointment has occurred in the past, it cannot be approved or made valid by Congress or by an official authorized by Congress to do so. Nor can Congress declare it or deem it, this unconstitutional appointment, to be a mere technicality and thus capable of de facto recognition under color of official title. Did you raise this issue before the board? No, the issue was not raised before the board. Was it and it was not raised in your opening brief or even in your reply brief, correct? That's correct, your honor. Why isn't it waived? It isn't waived because the Supreme Court says that an appointment clause violation is so weighty that it trumps any lateness issue or waiver issue. Well, where does it say that? In Freytag. But no, I think what they said in Freytag was that the court could consider the issue, not that it has to. There seems to be some discretion in the court's decision to consider an issue which wasn't raised. You're correct, your honor. It's discretionary. And the Supreme Court looked at it and the Supreme Court said that my discretion is pushed in this direction because it's such a strong interest in making sure there's no violation of the appointments clause. That might be true if it hadn't been for the corrective statute. But what's the strong interest in deciding? Could the statute solve the problem for the future? What, effective August 15th? Is that to have the date right? Yes, that's alleged to be true, that it did, in fact, correct. But that's debatable. What's debatable about it? Why is there an issue as to whether it corrected it for the future? Because Congress has power only to vest appointment in the Secretary of Commerce, not in the Secretary of Commerce by consent of the director. The statute reads, in the Secretary of Commerce with consultation by the director. Now, if Congress had said, well, I'm going to vest power in the Secretary of Commerce and he must consult with the vice president, or he must consult with my crony over here, Mr. X, who's a law school professor and pretty smart, that would violate the appointments clause. What does consultation mean? If it means consent, clearly it's a violation of the appointments clause. OK, so that's your argument as to why the statute doesn't correct it for the future. But let's assume we disagree with that and we say it does correct it for the future. My question, and the government may be able to answer this too, is there anybody who properly raised this issue for the past period, for the pre-August 15th period? Is there anybody who raised the issue before the PTO? No, there's no one who raised it before the PTO board. As you understand, when you come up to argue, you don't know who your panel is until it's presented. So it would have to be raised at that point in time. And for the PTO judges to look at section 6 of the statute. If we were to hold that this was a waiver, then that's the end of it for everybody, right? Assuming that the statute is constitutional going forward. Well, that's right, Your Honor. But we believe the Supreme Court would not see it that way. As a matter of fact, in the Glidden case. We'll find out from the translogic case whether they do or don't. They'll tell us. But it wouldn't necessarily be a waiver for everybody. Because here, arguably, the waiver is for a party that could have raised the issue at a time when the patent office could have reconstituted the members of the board. Well, certainly it's not a waiver for those cases who have already been decided. They're not up on appeal. They're not before your court. And I think as to those who become final, you mean? Yes. The de facto officer doctrine would seem to insulate final judgments from attack on this ground, right? No. The de facto officer doctrine will not work here. Because the de facto officer doctrine is to statute that is a mere technicality. For example, if the statute, if Congress Your theory is that all these past cases that were decided by improperly appointed patent judges could be reopened. No, not at all. I'm not speaking to that issue. I don't know the answer to that issue. I think the Supreme Court looked at that issue and said that at least as to the cases on appeal, those limited number, we may have to suffer the consequences of bad legislation or attempts to override or breach the appointments clause. So as to the lateness issue, I think it trumps it. And this court should find that it trumps it and just go on to decide it. Rather than letting the PTO board decide whether or not they have the power to rule on whether or not they have the power or are the unconstitutional. This is the court that should really decide that issue. Now, as to retroactive appointment as to that issue, first of all, the two officers below, the two board members, the two judges were unconstitutional and invalid because they were inferior officers and they were appointed by the director of the PTO. Now, the government doesn't dispute that. It doesn't come out and say, no, these aren't inferior officers or they weren't appointed by the director of the PTO. That means that they're unconstitutional. Congress then cannot retroactively appoint these judges and then erase their unconstitutional offices that were held in the past. Now, Congress may be able to cure it prospectively as to the future, but not as to the past. And to do so would deprive the appellant here of its constitutional rights that existed when the controversy arose before the board. And those rights were to have one's case heard before judges who are constitutionally appointed by the safeguard mechanisms of the Constitution's structure of separation of power. Now, here's the problem. The problem is this. Congress says that I will legislate that my crony over here can appoint federal judges. And then if anyone complains, I will just legislate that the Secretary of Commerce can validate their past actions. And what's the Secretary of Commerce going to do? Is he going to suffer the unhappy consequences of bad legislation, or will he merely say I'm going to validate what's happened in the past and then go forward with the future and try to do better next time? That's the problem. The Supreme Court has stated that Congress and the executive cannot agree together to waive the structural protection. It's a safeguard to the republic, and it must have clear distinctions. It is established by high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of inner office conflicts. You see, Congress has no power to approve or validate unconstitutional acts of the past. Congress's sole power is to vest appointment power in one of three persons. Congress cannot remove power from the appointments clause. Congress cannot add power to the appointments clause. And here, Congress is attempting to add power to the Secretary of Commerce, granting retroactive appointment power. And Congress doesn't have that power in the Constitution. Now, the government cites three cases to support its view. Quackenbush, Swain, Heinzen. These cases are not on point. There was no constitutional violation in either of these cases. And further, there was no legislation in an attempt to cure a constitutional violation. There's a difference between retroactive appointment and retroactive legislation. But even retroactively applying a statutory created right is sensitive to potential injustice. Mr. Jarvis, I think we have your argument on this point. If in the few minutes you have, would you like to address the obviousness issue? Yes, Your Honor. And in particular, the commercial success aspect. Yes. I suspect that this court has never had a case with so much commercial success as this one. This is phenomenal. $130 million of products sold in two years. Now, this is the bottle right here. It's empty. It sells for $40 retail. Now, I might get suckered into buying it once. But when I start buying cases of it, my wife is going to wonder, what's the matter with me? Or else, what is it that's in this juice? The company that started this. What's to suggest that the success is not due to the fact that this is a new fruit or an effective marketing operation or both? Proving a negative is extremely difficult. Proving that this is the invention, what the claim covers, and was patented and sold and made $130 million in two years can be proved. It can also be proved what the advertisement was like and how much dollars was spent on advertisement and compared to the sales amount. But the patent office has no way of knowing whether all of that success is due to the combination of the three components of this juice or just the fact that it was a juice that contained mangosteen. Exactly. And the important issue before this court is, what is it? In other words, there's nothing to indicate that if, for example, the pulp component had been omitted, that the exact same commercial success wouldn't be apparent. Right. And the claim here is very narrow. Anyone can make it with the pulp component removed. Anyone can make it with the rind in any other juice. That's not what's being claimed. It's very narrow with three components. And two of them, they are teaches that shouldn't be combined. And the first examiner found that to be the case. But what the issue here that's important is, how does one prove commercial success in front of the patent office? Is it that the evidence, more likely than not, tips it that there is commercial success, like in front of a jury? Is that what it is? I've got enough evidence that should go to the jury here, and more likely than not. Can't the patent office say that it's so clear on the face of the prior art and this patent application that the thing is obvious that no amount of commercial success is going to render this patentable? Isn't that permissible? So in terms of the 103 secondary consideration analysis, you're suggesting that the patent office say, this art is so close that I don't even need to look at secondary considerations. Well, this court has said no, that you must look at secondary considerations. Look at them, but the question is, if there is commercial success, does that render it patentable? Can't they look at these secondary considerations and say, well, we don't care how strong these secondary considerations are here, because the prior art is so close that it's obvious regardless of the secondary considerations weighing in favor of the applicant? Merely because I have secondary considerations doesn't mean I have invention. This court has said often, that's a primary factor in making the decision, but it doesn't mean I do. But at least let me get my secondary considerations into evidence so that you can make that decision. But isn't that exactly what the board did? And the board say, all right, commercial success, but you still have to attribute it to something unique about the invention itself. There's nothing unique, so no amount of commercial success is going to persuade us that this is patentable. Though the board here refused to look at the commercial success evidence. The examiner said, no, you need a utility nexus test. You don't have that. Then the board said, no, you need a difference over the prior art nexus test. You don't have that either. We're not going to look at it. The board did look at the evidence, did it not? It commented on the evidence. Now, maybe some of the things it said were a little strange, but it did review the evidence and ultimately was unpersuaded. Yes, that's correct. It looked at all the evidence, but it said, you haven't done enough here. You have a nexus missing. Not only that, you have some evidentiary problems, and that was a new ground of rejection that the patent owner here should have been able to respond to. I think the problem you have is that if the question was, have you proven commercial success? Well, yes, you've got a declaration and you've got evidence of $130 million worth of sales. The question is, are these claims unobvious? So the commercial success is commercial success that leads to an inference of unobviousness, and there's a missing link because of the absence of a nexus. Isn't that the problem? Because the problem here is that the art says you don't combine these elements. We combined them and sold millions of dollars of product, and that is an indication as to two factors, a teaching away as well as a secondary indication of indicia that there is something here going on, despite the fact that these components were known before and no one put the first two together. The examiner found that the case, the first examiner, he allowed it. The second examiner comes up with art on something different, on components two and three, and says, OK, we've got a substantial new question of patentability. It wasn't substantial and it wasn't new. That was the old one. We've consumed your rebuttal time, but we'll restore two minutes. So let's hear from the other side. Thank you, Your Honor. Thank you. May it please the court, Thomas Shaw on behalf of the director of the United States Patent and Trademark Office. I assume you're dividing your time with your colleagues. Yes, Your Honor. With me on the case is Michael Rapp from the Department of Justice. And with the court's permission, I'd like to address the patentability issues and defer to Mr. Rapp on the constitutional issues raised by the Appointments Clause. Very good. And I'll leave it to you to watch the clock and divide the time with your colleagues. Thank you, Your Honor. This is a very straightforward case. And getting to DBC's question of how they can show commercial success in this case, I think the answer is fairly simple. And that is you can get consumer surveys showing why people are actually buying the juice. I think that the board found that there are any number of reasons why people might be buying the juice. But the DBC didn't show that people were buying the juice because of the difference between their juice and the prior art. And that is the crux of the nexus test, is that DBC has to show that the commercial success is due to the difference between this product and the prior art. And that was the missing element that the board found. And that's why I'm at the board's decision saying that we're not going to consider Mr. Bean's testimony. That seems to me, to put it charitably, a bit strange. What is wrong with Mr. Bean's affidavit? But I think that they did consider Mr. Bean's affidavit. I think they tended to discount it because they felt it was a bit conclusory. You say you said these are the ingredients. What's the guy supposed to do? I don't understand. Well, I think they were looking for more hard evidence. The Huang test from this court asked for hard evidence. And I think perhaps they were looking for more reports in the nature of laboratory tests and things like that. If you look at the label that DBC submitted, it lists the ingredients, but it doesn't really have any proportions. It just says it's a proprietary formula and doesn't actually list the percentages of the different ingredients. So I think that they felt that perhaps was a bit conclusory. I guess they could have asked him to do a laboratory test if they were worried that he had the ingredients wrong, right? Yes, I think they could. He made the averments to support these various things. And it seemed that the board just simply ignored what he had to say. For example, it says his declaration provides no persuasive evidence of any real personal knowledge of the contents. But yet he averred that he conferred with the officials in the company that were aware of these things and confirmed that these things were as represented. Isn't that sufficient? It is to describe the ingredients, but you still have the fundamental problem of showing the nexus between the commercial sector. What you could do, you could say, well, I guess the board made a mistake in this respect, but it doesn't make any difference in the outcome. I mean, you could say that. Yes, Your Honor, you could certainly say that. They made a number of statements, and it seemed that every one of these statements discounting this declaration was wrong in some form or another. But at the end, it did say that appellants must meet a minimum burden of proving their case of commercial success and nexus with persuasive evidence of record evidence sufficient to render the claims unobvious. And they went on to talk about the evidence has not persuaded us that the sales were a result of anything other than marketing, increased popularity of mangosteen, and improved availability of the fruit in general. So it seemed to me that ultimately, they did make some assessment of the evidence that seemed to me to be consistent with the standards. Yes, Your Honor, I think they carefully considered the affidavits, but in the end, they found that they were persuasive given the strong showing of prima facie obviousness that Leapfrog and other cases discussed. In this case, it was a very strong showing of prima facie obviousness. And therefore, despite what they saw as significant sales of $130 million, because they couldn't show that nexus as to why consumers were buying the product, it was insufficient at the end of the day. I guess for me, the conclusion I think is understandable. It's just the analysis leading up to the conclusion is certainly less than one would have expected. I agree, Your Honor. Unless the court has no other questions, I'll defer to my colleague, Mr. Rapp, if this court has any questions on the constitutionality. Thank you very much. Good morning. Good morning, and may it please the court, Michael Rapp from the Department of Justice appearing on behalf of the director of the PTO. DBC did not timely raise its appointments clause challenge for the reasons explained in our supplemental brief. In any event, the secretary properly reappointed the Is there anybody else who, assuming that the statute fixed things for the future, hypothetically, is there anybody who properly raised the issue? In other words, is this going to have to be decided under your waiver theory in some other case? From what I've been told by the PTO, we're not aware of any case in which a timely objection was made before the PTO. Is there any case in which people have raised it properly in their opening brief in this court? We are aware of one case that's pending in which they've, I don't believe the opening brief has yet been filed, the case called Hickman. It's my understanding they've expressed an intent to raise the issue. But they didn't raise it at the PTO. But they did not raise it before the PTO. And for the reasons explained in our opening brief, the corrective statute does take care of the problem. And in any event, the issue has been waived. The court has no further questions. Well, I think it's a real problem whether it can cure the problem retroactively. De facto cases seem to me are addressed to situations where there's been a final judgment, which is not this case. So if one were inclined to pass over the waiver, which I guess we have discretion to do and to consider this issue, it seems to me that on the merits, you've got a problem with the purported retroactivity of the statute. With respect to Dyke, I don't think that's true. We think, first of all, the Supreme Court has long indicated that retroactive appointments of officers can be made. The purposes and requirements of the appointment Is that Navy officer case? I mean, is there any other one besides that? Not from the Supreme Court, but there's cases from the predecessor of the Court of Federal Claims. They largely involve military officers. But in any event, It appears there's not simply a statutory infirmity or a technical defect, but arguably a constitutional infirmity. Well, but again, you're on the important point with respect to that issue is the purposes of the Appointments Clause, as the Supreme Court indicated in Freitag, are to prevent the diffusion of the appointment's power. So in this case, to ensure that the head of an executive department is the one making the appointment so that you have proper accountability, public accountability, for the actions of those officers. Here, the Secretary of Commerce, both prospectively and retrospectively, is saying, I, an indisputable department head, am taking responsibility for the actions of these patent administrative judge, administrative patent judges that I'm appointed. And that's perfectly appropriate. There's nothing inappropriate. And the Supreme Court- The problem is there just doesn't seem to be any authority for retroactive appointments. The retroactive appointing cases, including the Navy case, the Supreme Court, if I recall correctly, I may be wrong about this, all seem to involve the right to compensation as a result of a retroactive appointment, which seems to me to be a quite different question than the authority of the officer to act under the Constitution. Well, with respect to, as well, the other cases, the Swain and Hoyt case, for example, that we said, as well as the Hyneson case, which involved actions taken in the Hyneson case by the president of levying tariffs that he had admittedly no authority to levy within the territory of the Philippines. And Congress retroactively enacted legislation saying, those tariffs that were levied by the president over the two-year period, those are perfectly- those are now we are retroactively blessing. The Supreme Court didn't bat an eye in Hyneson in saying that curative statute appropriately can be applied retroactively without any problem. We don't think that there's any meaningful difference here. Here, there is no question but that the only requirement of a qualification requirement of these individuals, that they be of sufficient technical legal comp- have sufficient technical legal competence and scientific knowledge were satisfied, that these judges all meet that requirement. And that just as Congress can retroactively approve tariffs levied on individuals over a more than two-year period, so too Congress can say, Mr. Secretary, you now have authority to take responsibility for appointments clause purposes over these officers if you choose to do so. And if you choose to make them retroactive, you can retroactively take responsibility for their prior actions as well. That's exactly- Possibly distinguishable situation. Do we have any appointments case, any case, either from the Supreme Court or our court or our predecessor, which suggests that you can make a retroactive appointment which authorizes the officer to act in a way that the officer wasn't authorized to act at the time? Put aside the compensation case. Well, but as you said, those compensation cases also make clear that they're treating the officer as though he had been the officer during those relevant time periods. And I don't think that you can just readily distinguish those long-standing, long historical practice away. And in any event, Congress has blessed or, you know, we don't think there's anything about the logic of those cases that call into question Congress's power to say, Secretary of Commerce, you are undeniably out of a department. You, for appointments clause purposes, consistent with what the Supreme Court mentioned in Vrijtec as the core purpose of the appointments clause, can now take responsibility for the actions of these judges should you choose to do so. He has properly chosen to do so. He has appointed them. There's nothing inappropriate as a follow-up appointments clause requirements or certainly its core purposes to say the secretary can properly do that. In any event, any difference between taking responsibility for someone's past actions and the authority in the first instance to have appointed someone? I don't think so, Your Honor. I mean, I think if anything, it shows the secretary now knows all of the actions that the judges have taken and is saying, I'll take responsibility. I will take the political heat if anybody wants to complain about who appointed this individual on the person you go to. So if anything, it's even clearer the backdrop against which the appointment is made, as opposed to prospectively not knowing what that individual is or is not going to be doing when exercising the powers vested in him by the office. So we don't think there's any problem with that. Alternatively, we do think the de facto officer doctrine would provide a basis for relief here. But in any event, if the court had any questions about this, the appropriate course would be not to reach out and resolve an issue of constitutional law that it thought were difficult, with respect we don't think is, but rather just to remand to the panel so that it can decide, the PTO can decide whether to ratify the decision that it's already been reached. So in any event, there's no need for the court to reach these issues under any appropriate view of the case. The de facto officer doctrine is something created by courts. And here we have an interesting little twist, because Congress has now, by statute, applied the de facto or attempted to apply the de facto doctrine. What impact does it make a difference, the fact that that provision is in the statute? Or does the doctrine apply under judicial concepts regardless? We think the doctrine would apply under judicial concepts regardless. But even if it didn't, we don't think there'd be a problem with Congress making a remedial choice. Under your theory of the de facto officer doctrine, there could never be a challenge under the Affinity Clause, because everybody's a de facto officer, right? That's not necessarily true. In the context of this case, we think that based on prior Why is my statement not necessarily true? I wouldn't prejudge every case. I mean, the de facto officer doctrine is not the clearest doctrine in terms of all of the relevant fact-bound considerations that often get applied. In these circumstances, we think one can categorically conclude that these judges fit the criteria set forth in prior cases with regard to the doctrine. But then even again, I hasten to add, there's no need for the court to resolve any of these issues, even if one were to conclude that the issue had been timely raised, which it hasn't been. And if the court had any concerns about any of these questions, the appropriate course really would be based on basic, longstanding doctrines of constitutional avoidance to send the case back on remand. If the court has no further questions. All right, thank you very much. Mr. Thomas, you have two minutes. Yes, Your Honor. Just briefly, as to the commercial success issue, if you have prior art that's cited against you that is 1865 prior art, what are you going to do to show that that product is still out on the market? And every piece of prior art you've got, you've got to go out and find, is it there, is it there? And then how do I compare it? And what happens if it's not there? It was there maybe 20 years ago. Secondly, as to the Appointments Clause issue, first of all, in Quackenbush, the Supreme Court didn't validate past actions of the Naval officer. The Naval officer wanted his back pay and his retirement going forward. They did not give him his back pay, but they did give him his retirement going forward based on his grade and rank as of the past. This is not a situation here where Congress is going to have to pay these PTO board members through a remedial act of Congress. The Swain case is also not applicable here. There was no retroactive appointment by Congress. The issue was whether the acts of the Secretary of Commerce were authorized by Congress in the first place. The Supreme Court found that there was no constitutional violation in the Secretary performing these acts. This is not the situation here where the Secretary of Commerce had appointed these two PTO board members, leaving the issue open as to whether Congress gave the Secretary the power in the first place. But even if that were the case, it's still a constitutional issue and not a statutory issue. And as to Heinzen, there was no constitutional violation again. The issue was whether Congress could ratify earlier taxes collected by the President and whether that was beyond Congress's power of enactment. Because Congress had power to do that in the first place, collect taxes, Congress can ratify the collectors who had done it before. Here, Congress has no power to appoint federal PTO judges. Nor does the Secretary of Commerce have any power to appoint PTO judges. Only the President, with consent of the Senate, can do that. Unless. Mr. Jarvis, thank you very much. Your time has expired. Appreciate the argument on both sides. Thank you, Your Honor. Case is submitted.